### PEOPLE ex rel. MACNISH v. WALDO, Police Com'r.

(Supreme Court, Appellate Division, Second Department. April 10, 1914.)

1. MUNICIPAL CORPORATIONS (§ 189*)—POLICE—THREE PLATOON LAW—DRILLING.

Under the Three Platoon Law (Laws 1911, c. 360) § 1, providing for the sergeants, roundsmen, and patrolmen of a city police force, who may be on duty in the open air, being divided into three platoons; that no one of such platoons, or any member thereof, shall be assigned to more than one tour of duty, such tour of duty not to exceed 8 hours of each successive 24 hours, nor more than 8 hours of reserve duty of each consecutive 72 hours, excepting that in enumerated emergencies (none of which have anything to do with drills), they may be continued on duty for such hours as may be necessary; and section 3, providing policemen while on reserve duty, as mentioned in section 1, shall not be required to render any service, and shall be free to retire for sleep, except in case of an emergency—one of such policemen may not be required to drill during his 16 hours a day of time off, or while on reserve duty.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 487, 523, 524; Dec. Dig. § 189.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—DISCHARGE—DISOBEYING ORDER VIOLATING LAW.

A policeman may not be dismissed for disobedience of an order violating the Three Platoon Law (Laws 1911, c. 360).

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

Putnam, J., dissenting.

Certiorari, by the People, on the relation of Robert MacNish, to review the determination of Rhinelander Waldo, as Police Commissioner of the City of New York. Determination annulled.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLETON, and PUTNAM, JJ.

Florence J. Sullivan, of New York City, for relator.

James D. Bell, of Brooklyn (Frank Julian Price, of Brooklyn, on the brief), for respondent.

STAPLETON, J. The relator was a member of the police department of the city of New York. His rank was that of patrolman. At about 12:15 a. m. on May 9, 1913, he was ordered by the lieutenant at the 174th precinct, where he was stationed, to report for drill instructions at the Thirteenth Regiment Armory at 3 p. m. of the same day.

The drill consisted of marching, and during the drill the men were under the directions of their superior officers. The relator did not report for drill as directed, and for his failure so to do he gave the following written reason:

"I did not attend drill this P. M., the same being my time off and in [sic] the same being in violation of law."

He was put on trial for disobedience of orders, found guilty as charged, and dismissed the force on June 4, 1913. He brings this writ of certiorari to review the determination in that proceeding. The facts are admitted, but the relator contends that the order was not a lawful order, and that he was therefore free to ignore it. He submits that the order was void, inasmuch as it was violative of chapter 360 of the Laws of 1911, entitled, "An act to promote the health and efficiency of policemen in cities of the first and second class," and popularly known as the Three Platoon Law. The sections of that law which have particular relation to this case are:

"Section 1. * * * The commissioner of police, * * * or other officer or officers, having the management, control or direction of the police force of any city of the first or second class in this state, shall divide the sergeants, roundsmen, and patrolmen of such force * * * who may be on duty in the open air, on the streets or other public places of the city, into three platoons. No one of such platoons nor any member thereof shall be assigned to more than one tour of duty; such tour of duty shall not exceed eight hours of each consecutive twenty-four hours, nor more than eight hours of reserve duty of each consecutive seventy-two hours, excepting only that in the event of strikes, riots, conflagrations, or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty, so many of said platoons, or of the members thereof, may be continued on duty for such hours as may be necessary. * * *

"Sec. 3. Policemen, while on reserve duty as mentioned in the first section of this act, shall not be required to render any service except in case of an emergency, and shall be free to retire for sleep during reserve duty in their station house, subject to call in case of an emergency. For the purpose of this act, an emergency shall be defined as enumerated in section number one of this act."

[1] So far, this law has not been the subject of judicial interpretation; but on March 2, 1912, the Attorney General gave an official opinion in which he said:

"Beyond all doubt it is the evident and clear purpose of section 1 of the statute under examination to limit the active service or duty of such sergeants, roundsmen, and patrolmen to only 8 hours in each consecutive 24 hours. There is no substance in the suggestion that the forced performance of drill duty within the 24 hours in which such sergeants, roundsmen, and patrolmen have already performed their regular 8-hour tour of duty is not active or service within the provisions of section 1 of chapter 360 of the Laws of 1911. If such policemen are not on active duty, they must be deemed on reserve duty, but, according to section 3, * * * 'while on reserve duty' they 'shall not be required to render any service except in case of an emergency and shall be free to retire for sleep during reserve duty in their station house, subject to call in case of emergency.' * * * Under section 1 emergencies are defined as 'strikes, riots, conflagrations or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held.' This compulsory drilling is clearly not an emergency provided for in section 1 of this law, nor is such compulsory drilling permitted or authorized by section 2 of the law

under consideration. I am therefore of the opinion that officials * * * are without authority to require any sergeant, roundsmen, or patrolmen 'of such force to perform drill duty or to go to certain designated places in order to receive instructions in drilling in addition to and within the 24 hours in which such policemen have already performed their regular 8-hour tour of duty."

This opinion is in accord with the intendment of the statute, which clearly meant, by the provisions of section 1, to limit the active duty of the designated officers to 8 hours in every 24 consecutive hours, except in the event of certain specified emergencies, of which drilling was not one. The exemption from active work applied to the remaining 16 hours; but lest, because of the physical presence of the men in the station, there should be any uncertainty as to their rights while on reserve duty, it was provided by section 31 that while on reserve duty, they shall be free to retire to sleep, subject to call in the event of the emergencies specified.

The respondent, in a supplemental memorandum, calls attention to the case of People ex rel. Gallagher v. Waldo, decided in the First Department, a memorandum of which appears in 144 N. Y. Supp. 1138. The memorandum reads:

"Writ dismissed, and proceedings affirmed, with $50 costs and disbursements. No opinion."

That case is distinguishable from the present one. There the relator, who was a police sergeant, was relieved from active duty at midnight. He was then free until 8 a. m., and could have gone home if he cared to; but as he lived out of town he slept in the station instead of going home. Around 12:20 a citizen complained of having been insulted by a police sergeant in the toilet of the station, and Gallagher, who at this time was upstairs in his nightshirt, was directed by the lieutenant to come down to the desk to be confronted by the accuser. He refused to do so, saying, "They can see me on my tour at 8 o'clock." He was tried for insubordination and dismissed from the force. The charge against him was not that he refused to perform extra duty, but that he refused to appear at the desk to be confronted with a person who had accused a police sergeant of an offense, he being the only one of the three sergeants who had not appeared before the accuser.

With the policy of this legislation or the effect of it upon the administration of the police department, we have no official concern. We are to decide the law as it is written, and when it is written plainly, as in the case of this statute, our sole guide is the statute itself. The commissioner and the commanding officer of the department are creatures of the written law, and they have no authority except that expressly conferred by the law or necessarily incidental to the proper discharge of the powers expressly conferred.

The first impression is to recoil from the suggestion that a subordinate in a department, for the proper management of which discipline is essential, may construe a statute, and, if his construction is correct, disobey with impunity an order of a superior given in violation of the statute. But the law is on the books and must be given effect. It is not sufficient to say that a penalty is prescribed for its vio-

lation, and that its life must be preserved solely by that means. Those concretely interested in its enforcement are not required to wait until some jury agrees with the policy of the Legislature. They may, as good citizens, refuse everywhere, at any time, to aid in its violation by obeying orders given in defiance of its provisions.

[2] We are constrained to hold that a member of the police force may not be dismissed for disobedience of an order which violates the provisions of chapter 360 of the Laws of 1911.

The determination of the police commissioner is annulled, with $50 costs, and the relator reinstated.

THOMAS and RICH, JJ., concur. JENKS, P. J., concurs in the result in a separate memorandum. PUTNAM, J., reads for confirmation.

JENKS, P. J. I agree with my Brother PUTNAM in his interpretation of the statute, but I am against affirmance because as a result the relator is dismissed the force. As I read the record, his action was to make a test case in order that his duties and his rights as prescribed by a statute in direct regulation of the police force would be determined by the court. The question is substantial, and our difference indicates it is serious. Under the circumstances, I think that the relator should not be dismissed the force for disobedience of orders. My opinion is limited to the peculiar facts of this case, and does not involve the general proposition that a policeman may refuse obedience to orders or to regulations perforce of his personal view of the law.

PUTNAM, J. (dissenting). Patrolmen have as "time off" the intervals that may come between the tour of duty on patrol and the period of reserve, or between two successive tours upon patrol. If between patrol tours there come 8 hours on reserve, which may be once in 72 hours (section 1), the "time off" may be but four consecutive hours; if no reserve duty intervenes, the patrolman may have 16 running hours as "time off." A clear distinction is made between "reserves" and men off all duty, enjoying "time off." "Reserve duty" is for those patrolmen who once in three days are not in the open air or on streets or public places, but are held at the station houses for emergencies. Section 3 declares that such policeman "while on reserve duty"—a condition not left vaguely—but "as mentioned in the first section of this act," that is, such men held for duty at the·station houses, "shall not be required to render any service, except in case of an emergency, and shall be free to retire for sleep during *reserve* duty in their station house, subject to call in case of an emergency." The relator was not on *reserve* duty when he was ordered to report for drill. This Three Platoon Law did not relieve him from obedience to the rules of the department. Section 6. Not being one of those within the exemption of section 3, who are those held on reserve duty, he was not justified in refusing to report for drill. Such seems to me the literal construction. It allows a needed rest to the men held on duty at the stations. It is also designed to prevent the reserves from being

depleted by details to outside work. I think this act did not discharge from obedience all policemen during their "time off." Seven hours of drill in a year seems reasonable, in order to maintain police discipline and efficiency.

Hence I vote to confirm.

(84 Misc. Rep. 557)

### SWEENEY v. NASSAU ELECTRIC R. CO.

(Supreme Court, Special Term, Kings County. March, 1914.)

1. STATUTES (§ 47*)—STATUTORY PROVISIONS—COMPLETENESS.

While in Judiciary Law (Consol. Laws, c. 30) § 480, added by Laws 1913, c. 603, providing that "if in an action * * * for a personal injury * * * an attorney having or claiming to have a lien * * * who shall have appeared for the person" having or claiming the right of action no settlement or adjustment shall be valid unless consented to by the attorney or approved by the court, the conditional clause is incomplete, the legislative intent is sufficiently indicated, and the defect may be remedied by inserting "there is" before "an attorney" in the quoted portion.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 47; Dec. Dig. § 47.*]

2. CONSTITUTIONAL LAW (§ 276*)—DEPRIVATION OF LIBERTY TO CONTRACT.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 845, 846; Dec. Dig. § 276.*]

3. COMPROMISE AND SETTLEMENT (§ 2*)—STATUTORY REGULATION.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 1–4; Dec. Dig. § 2.*]